John F. "Jack" WALSH, et al., Plaintiffs,

v.

FORD MOTOR COMPANY, Defendant.

Civ. A. No. 81–1998.

United States District Court, District of Columbia.

Feb. 13, 1986.

See also, D.C., 588 F.Supp. 1513.

Beverly C. Moore, Jr., Law Offices of Beverly C. Moore, Jr., Landon Gerald Dowdey, Law Offices of Landon Gerald Dowdey, Washington, D.C., Wallace J. Smith and Ben Schiebel, Wallace J. Smith, Inc., Sacramento, Cal., Barry Schwartz, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., William H. McDonald, David A. Childers, John E. Price, and Robert M.N. Palmer, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, Mo., for plaintiffs.

William T. Coleman, Jr., Richard C. Warmer, Carl R. Schenker, Jr. and John H. Beisner, O'Melveny & Myers, Washington, D.C. (Henry R. Nolte, Jr., James M. MacNee, Ford Motor Co., Dearborn, Mich., of counsel), for defendant.

## OPINION

JUNE L. GREEN, District Judge.

This class action was brought against defendant Ford Motor Company ("Ford") under the jurisdictional provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq. (1982) ("Magnuson-Moss" or "the Act")[1]. Plaintiffs seek damages, declaratory, and injunctive relief for breach of written and implied warranty, strict tort liability, and negligence because of allegedly defective automatic transmissions in certain types of motor vehicles manufactured by Ford.[2] The complaint alleges that Ford's 1976–1979, as well as certain 1980 model motor vehicles with FMX, C–3, C–4, or C–6 automatic transmissions, may slip into the reverse position while not being placed there by the driver.

In an opinion and order dated May 9, 1985, the Court conditionally certified three nationwide classes under Federal Rules of Civil Procedure 23(b)(3), 23(c)(1), and 23(c)(4). Walsh v. Ford Motor Co., 106 F.R.D. 378 (D.D.C.1985). In their motion

for class certification, the plaintiffs also sought to certify a punitive damages class for claims arising under the Magnuson-Moss Act. The Court postponed consideration of a punitive damages class in its earlier opinion, instead requesting the parties to submit further briefing on the issue of whether punitive damages are obtainable on claims under Magnuson-Moss and on the issue of which law applies, if punitive damages do lie. Id. at 408–09. Now before the Court is plaintiffs' renewed motion for certification of a punitive damages class. For the reasons stated herein, the Court concludes that punitive damages do not lie in this Magnuson-Moss action and, therefore, declines to certify a punitive damages class.

### I. Class Certification In General

■ When determining whether it should grant certification to a class of plaintiffs, a court must not delve into the merits of the action. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir.1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). A court is obliged to determine only whether the requirements of Rule 23 have been satisfied. See Chestnut Fleet Rentals, Inc. v. Hertz Corp., 72 F.R.D. 541, 543 (E.D.Pa.1976) ("[T]he central issue raised in a motion for certification is whether a class action is appropriate, not the probability of plaintiffs' success on the merits of the substantive claim." (citing Eisen v. Carlisle & Jacquelin, 427 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732); Kahan v. Rosentiel, 424 F.2d 161, 169 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1878, 26 L.Ed.2d 290 (1970)).

■ The question of whether a class may be certified is left to the discretion of the district court. See, e.g., Gulf Oil Co. v. Bernard, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981). Further, Rule

---

1. This opinion will cite to Title 15 in the form, "section ——."

2. For a complete history of this litigation, see the Court's opinion in Walsh v. Ford Motor Co., 588 F.Supp. 1513 (D.D.C.1984).

23 determinations are made in a nonadversarial context. *McCarthy v. Kleindienst*, 741 F.2d 1406, 1421 (D.C.Cir.1984) (Mikva, J., concurring in part and dissenting in part). A court must determine, pursuant to the provisions of Rule 23, whether plaintiffs' cause of action is suitable for resolution on a classwide basis. *Id.* at 1412 n. 6; *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 2458 n. 12, 57 L.Ed.2d 351 (1978).

## II. *Plaintiffs' Punitive Damages Class*

Plaintiffs seek to certify the following class claim for punitive damages:

Punitive Damage Incidents:

All members of [the implied and written warranty classes and the personal injury class] including the following subclasses of such persons:

(a) pursuant to Rule 23(b)(3), all such persons claiming punitive damages directly under the Magnuson-Moss Act, and

(b) pursuant to Rule 23(b)(1)(B), all such persons, except those whose injuries occurred or whose Ford vehicles were purchased in Washington, Louisiana, Massachusetts, Connecticut, and Michigan, claiming punitive damages under state law, with further subclasses defined as necessary according to

(i) whether the person asserts a warranty, strict products liability, or negligence claim, and

(ii) whether the applicable state standard for an award of punitive damages is gross negligence or willful misconduct.

Plaintiffs' Proposed Certification Order, June 13, 1983. Because the Court has declined to certify the personal injury incidents putative class, punitive damages claims must arise solely from the implied and written warranty claims under the Magnuson-Moss Act. *Walsh v. Ford Motor Co.*, 106 F.R.D. at 405–06.

Plaintiffs argue that punitive damages are obtainable under the Magnuson-Moss Act. They contend that, although the Magnuson-Moss Act does not expressly provide for punitive damages, the statutory language in section 2310(d)(1) encompasses punitive damages. That section provides that "... a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages *and other legal and equitable relief....*" (Emphasis added). Plaintiffs buttress this extrapolation of the remedies provision by asserting that "[h]ad Congress intended to exclude punitive damages, it would have done so with the same explicitness as it excluded personal injury liability." Plaintiffs' Reply to Opposition of Ford Motor Company to Plaintiffs' Renewed Motion for Certification of a Punitive Damages Class ("Plaintiffs' Reply") at 1.

Further, plaintiffs, relying principally on *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1982), urge the Court to apply a uniform federal damages standard in Magnuson-Moss cases. This uniform federal standard which would include the right to punitive damages "... would be applicable to nonclass as well as class actions and to actions brought in state as well as in federal courts." Plaintiffs' Reply at 6. Plaintiffs propose that the Court glean the uniform punitive damages standard from the majority of states which permit the award of punitive damages under certain circumstances in common law warranty actions. Plaintiffs' Renewed Motion for Certification of the Punitive Damages Class ("Plaintiffs' Motion") at 10.

## III. *The Magnuson-Moss Act*

### A. *Statutory Purpose*

Since legislative history on the punitive damages question is entirely lacking, not to mention the paucity of case law on the topic, the Court will look to the evil that Magnuson-Moss was designed to remedy for guidance on this issue. This endeavor, however, poses a considerable challenge, as one court explained:

A literal reading of the Magnuson-Moss Act is only a departure point for giving meaningful content to the statute

which has been variously described as "disappointing," "opaque", and a product of "poor drafting". A review of the legislative history gives but limited solace. That review is the legal equivalent of an archeological dig. Various consumer warranty bills were pending before the House and Senate for four years, during which each body defined, discarded, reintroduced and redefined concepts which in some fashion or another are related to the enacted legislation. Some provisions in the Act are vestigial reminders of concepts buried but not totally forgotten during the on-going legislative process. Both proponents and opponents of an expansive interpretation have cited compelling, to them, legislative history only dimly related to the language which finally emerged as law.

*Skelton v. General Motors Corp,* 500 F.Supp. 1181, 1184 (N.D.Ill.1980) (footnotes omitted). This caveat in mind, the Court will evaluate the availability of punitive damages in light of all the provisions of the Magnuson-Moss Act, as well as the purposes and legislative history of the Act.

The Magnuson-Moss Act was promulgated to increase consumer rights and protections by imposing minimum standards for manufacturers' warranties and by providing various avenues for consumer redress. The vast amount of data that was adduced from the studies, proposals, and hearings which culminated in the Magnuson-Moss Act demonstrated the existence of numerous problems with consumer warranties, including (1) excessive exclusions and disclaimers of liability, (2) inadequate warranty coverage, (3) consumer difficulty in obtaining warranty repairs, and (4) complex, often incomprehensible warranty language. *See* Task Force on Appliance Warranties and Service, Report on Appliance Warranties and Service (1969) (prepared by the Federal Trade Commission ("FTC"), Dept. of Commerce, Dept. of Labor, and Special Assistant to the President for Consumer Affairs), *reprinted in part in* 1974 U.S.Code Cong. & Ad.News 7702.

The Magnuson-Moss Act does not require any seller to give a warranty. When a seller offers a written warranty, how-

ever, the Magnuson-Moss Act requires that the warranty satisfy certain disclosure requirements and minimum federal standards. Sections 2302, 2303, 2304, 2308. The Magnuson-Moss Act also encourages consumers and warrantors to resolve their disputes without litigation by use of the "Informal Dispute Settlement Mechanisms" sanctioned by the FTC. Section 2310(a).

Furthermore, the Magnuson-Moss Act provides a new cause of action for a consumer who is damaged by the failure of a warrantor or supplier to comply with the Act or with the obligations under a written warranty, implied warranty, or service contract. Section 2310(d)(1). Not to be overlooked is section 2310(e) which provides that no private action for breach of a written or implied warranty may be brought "unless the person obligated under the warranty ... is afforded a reasonable opportunity to cure such failure to comply." Section 2310(e). If the warrantor has adopted an informal dispute resolution procedure that meets FTC requirements, however, the consumer need not afford the warrantor an opportunity to cure the defect, but must resort to the dispute settlement procedure before instituting suit. Section 2310(a)(3), (e). When the suit is brought as a class action, the duties are somewhat modified. A class suit may proceed "to the extent the court determines necessary to establish the representative capacity of the named plaintiffs," before the named plaintiffs need give the warrantor the opportunity to cure or resort to the dispute settlement procedure. *Id.*

Although the right of action under the Act is a federal right, the statute provides that most private actions are to be brought in state court under section 2310(d)(1)(A); *see also* S.Rep. No. 151, 93d Cong., 1st Sess. 23 (1973). In order for a federal court to have jurisdiction under the Magnuson-Moss Act, the plaintiffs must meet certain conditions. Section 2310(d). These threshold requirements were intended to "avoid trivial or insignificant actions being brought as class actions in the federal courts." H.R.Rep. Rep. No. 1107, 93d

Cong., 2d Sess. 42 (1974), U.S.Code Cong. & Adm.News 1974, p. 7724. Since the consumer may recover all litigation expenses, including attorney fees, in a successful Magnuson-Moss action, bringing a warranty action as a matter of federal rather than state law has advantages. Section 2310(d)(2).

It is important to note that "[t]he federal action is parallel to and does not supplant state warranty remedies because the Act provides it does not restrict 'any right or remedy of any consumer under State law or any other Federal law.'" Schroeder, *Private Actions under the Magnuson-Moss Warranty Act*, 66 Calif.L.Rev. 1, 1 (1978) (quoting 15 U.S.C. § 2311(b)(1)). Some provisions of the Magnuson-Moss Act refer specifically to state law. For instance, section 2301(7) defines an implied warranty as a liability "arising under state law." *See also Walsh v. Ford Motor Co.*, 588 F.Supp. at 1525. ("... State privity rules do apply when determining the existence of an implied warranty cause of action under Magnuson-Moss." (and cases cited therein)).

In passing the Magnuson-Moss Act, Congress sought to provide an effective remedial mechanism for consumer claims involving relatively small amounts of damages. S.Rep. No. 151, 93d Cong., 1st Sess. 7 (1973); H.R.Rep. No. 93–1107, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Adm.News 7702, 7724; *Gorman v. Saf-T-Mate*, 513 F.Supp. 1028, 1033 (N.D. Ind. 1981). This design is clearly manifested in section 2310(d)(2), which authorizes the Court to award a reasonable sum to defray costs and attorney fees as part of a judgment in favor of a consumer. Furthermore, the recissionary provisions of section 2310(a), as well as the inability to obtain relief for personal injury tort claims under Magnuson-Moss, indicate plainly the remedial nature of the Magnuson-Moss Act. *See Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1068 (5th Cir.1984) (Section 2311(b)(2) of the Magnuson-Moss Act prohibits claims arising from personal injury based solely on a breach of warranty, express or implied); *see also Gorman v. Saf-T-Mate*, 513 F.Supp. at 1033 (The "legisla-tive purpose of [section] 2310(d) [of the Magnuson-Moss Act] is to provide a mechanism for consumer actions involving direct damages; it was not designed to reach personal injury claims.").

### B. Magnuson-Moss Is Based In Contract Law

■ As this Court noted in an earlier opinion in this case, "Magnuson-Moss is strictly a warranty statute based in contract law. When Congress passed the Act, it incorporated [Uniform Commercial Code ("UCC")]-based State warranty law and not State tort law." *Walsh v. Ford Motor Co.*, 588 F.Supp. at 1527; H.R.Rep. No. 1107, 93d Cong., 2d Sess. 6, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7702, 7707. The central purpose of damages in actions for breach of contract or warranty is to place the plaintiff in the same position he would have occupied had the contract not been breached. *See, e.g.,* 5A Corbin, *Corbin on Contracts* § 992 at 5 (1964); U.C.C. § 1–106(1). Consequently, punitive damages are not awarded for mere breach of contract, regardless of the motives or conduct of the breaching party. *Id; see generally* Simpson, *Punitive Damages for Breach of Contract*, 20 Ohio St. L.J. 284 (1959).

Consistent with these well-established principles, nowhere in the Magnuson-Moss Act is mention made of punitive damages. Given the general unavailability of punitive damages in contract and warranty cases, it could be assumed that Congress would have made specific reference to punitive damages had they intended them to lie in Magnuson-Moss actions. Indeed, "[i]n an act which specifically discusses attorney's fees and the kinds of claims permitted and prohibited, this absence of language could lead a court to conclude that Congress did not intend to have punitive damages lie in Magnuson-Moss causes of action." *Walsh v. Ford Motor Co.*, 106 F.R.D. at 406.

The Court, however, need not speculate. It is clear that the Magnuson-Moss Act is primarily a remedial statute designed to protect consumers from deceptive warran-

ty practices. *Skelton v. General Motors Corp.*, 660 F.2d 311, 313–14 (7th Cir.1981). Punitive damages are generally unavailable in such contract-based schemes as the Magnuson-Moss Act.

■ This general rule is subject to exceptions, though, as plaintiffs correctly point out. Punitive damages may be awarded, for example, when the conduct constituting the breach amounts to an independent tort or is accompanied by fraudulent conduct.[3] RESTATEMENT (SECOND) OF CONTRACTS § 355 (1979); *see also*, Sullivan, *Punitive Damages in the Law of Contract: The Reality and the Illusion of Legal Change*, 61 Minn.L.Rev. 207 (1977). Plaintiffs contend that this exception to the general prohibition of punitive damages in contract and warranty actions is encompassed by the open-ended language of section 2310(d)(1) which provides "for damages and other legal and equitable relief." To bolster this contention, plaintiffs survey state law on this issue and conclude that out of 51 jurisdictions, "45 or 46 ... appear to agree generally with the RESTATEMENT position." Plaintiffs' Motion at 10.

In passing the Magnuson-Moss Act, Congress did not intend to nullify the authority found in the U.C.C. as regards warranties. H.R.Rep. No. 1107, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News, 7702, 7706. Section 1–106(1) of the U.C.C. addresses remedies:

> The remedies provided by the Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential nor penal damages may be had except as specifically provided in this Act or by other rule of law.

Thus, it is that the Court has difficulty reconciling section 1–106(1) of the U.C.C. with plaintiffs' reading of section 2310(d)(1) of the Magnuson-Moss Act.

■ The U.C.C.'s sections governing damages for breach of warranty (§§ 2–714, 2–715) do not provide for punitive damages. Neither does the Magnuson-Moss Act address the issue of punitive damages. While various states do permit punitive damages when a breach of warranty is also found to constitute "independently" tortious conduct, the variety of approaches to punitive damages among the states indicates less consensus on the issue than controversy. *See, e.g., Brinks, Inc. v. City of New York*, 717 F.2d 700, 704–05 (2d Cir. 1983); *American Laundry Machinery Industries v. Horan*, 412 A.2d 407, 416–17 (Md.Ct.Spec.App.1980). *See also Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 605, n. 14 (S.D.N.Y.1982) (noting that "the doctrine of punitive damages takes different forms, and requires different showings, in different states."); *see generally* K. Redden, *Punitive Damages* § 5.2 (1980). While the Court has concluded that the Magnuson-Moss Act does not contemplate the award of punitive damages, it is also the case that Magnuson-Moss does not restrict "any right or remedy of any consumer under State law or any other Federal law." Section 2311(b)(1).

### C. Federal-State Warranty Law Overlap

Congress was well aware that it faced something less than a clean slate when it confronted the problems of consumer warranties. Section 2311 attempts to delineate the extent to which Magnuson-Moss affects the complex pattern of existing state and federal law. As noted, section 2311(b)(1) preserves the rights and remedies under state and federal law. The consumer is thus free to ignore Magnuson-Moss and seek redress through more traditional avenues, such as breach of warranty, fraud, or recission. The deference paid by section 2311(b)(2) to state laws regulating liability for personal injury and consequential damages is also in keeping with this contract-based statute's remedial purpose. *Supra* at 1523.

So too, section 2310(d)(1) was drafted with the intention of preserving whatever state law remedy might be available. In other words, if suit is brought under state

---

**3.** *See* Second Amended Complaint ¶¶ 33, 36.

law, state law controls the nature of relief to which the consumer is entitled. This reading is in keeping with the language of section 2310(d)(1)(A), channeling most private actions into state court. *See also* S.Rep. No. 151, 93d Cong., 1st Sess. 23 (1973).

The Court concludes that plaintiffs' expansive reading of section 2310(d)(1) is inconsistent with the structure and purpose of the Magnuson-Moss Act. The crucial point, as one commentator has observed, is that "[t]he Magnuson-Moss Warranty Act adds a new layer of federal warranty law to existing state warranty doctrines. In a few instances, as in the case of implied warranty disclaimers, the federal act supplants state law. For the most part, however, the federal and state doctrines coexist." Schroeder, *Private Actions Under The Magnuson-Moss Warranty Act,* 66 Calif.L.Rev. at 35; *cf.* 15 U.S.C. § 2301(7) (specifically recognizing implied warranties under state law).

Plaintiffs brought this suit in federal court pursuant to the special jurisdictional provisions of the Magnuson-Moss Act. Section 2310(d)(1)(B). The Court is not free to wander beyond the parameters of the statute into areas of traditional state concern, such as punitive damages. *Overseas National Airways, Inc. v. United States,* 766 F.2d 97, 100–01 (3d Cir.1985) (citing *Executive Jet Aviation Inc. v. City of Cleveland,* 409 U.S. 249, 272–73, 93 S.Ct. 493, 506–07, 34 L.Ed.2d 454 (1972) (and cases therein)). *See Keene Corp. v. Insurance Company of North America,* 597 F.Supp. 934, 938–39 (D.D.C.1984) (punitive damages law is an area of special concern to States). For whatever reasons, the Congress envisioned an overlapping, if not coextensive, body of warranty law. The resulting complexity occasioned by the interplay between the federal and state systems is no basis for displacing state law on a narrow aspect of punitive damages when the Act is silent on the issue. *See Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934) (federal courts should confine their own jurisdiction to the precise limits which a federal statute has defined).

## IV. Assessment of Punitive Damages Is Chiefly a State Concern

The Court, by its ruling today, is not saying that punitive damages are never recoverable under the Magnuson-Moss Act. Indeed, several courts have refused to rule out recovery of punitive damages under the Magnuson-Moss Act. *See Boelens v. Redman Homes, Inc.,* 748 F.2d at 1069; *Saval v. BL LTD,* 710 F.2d 1027, 1033 (4th Cir. 1983); *Schafer v. Chrysler Corp.,* 544 F.Supp. 182, 185 (N.D.Ind.1982); *Lieb v. American Motors Corp.,* 538 F.Supp. 127, 132–33 (S.D.N.Y.1982); *But see Novosel v. Northway Motorcar Corp.,* 460 F.Supp. 541, 545 (N.D.N.Y.1978) (intimating that punitive damages are never recoverable under Magnuson-Moss). These rulings, however, were limited to Magnuson-Moss actions for breach of warranty brought under state law. By contrast, the present action is brought as a federal action pursuant to the provisions of section 2310(d)(1)(B).

At the same time, the issue of certifying a punitive damages class under the Act does not lend itself to a simple examination of the choice of law rules of the forum. *Walsh v. Ford Motor Co.,* 106 F.R.D. at 407–08. Given the size and nature of this class action, not to mention a potential punitive damages class, "the Court cannot ignore the national interests at issue in this case by virtue of the Federal Magnuson-Moss Warranty Act." *Id.* at 408. Thus, no one forum may have a superior interest in having this matter adjudicated according to its punitive damages law.

Likewise, plaintiffs' argument that a uniform Federal law, derived from a majority of all states, should govern the availability of punitive damages under the Act must fail. Plaintiffs cite *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632, as support for this proposition. In *Smith* the Supreme Court found that punitive damages are available under Section 1983, Title 42, United States Code. The Court made this conclusion despite the lack of legislative history on the issue. Justice Brennan, writing for the Court, stated that "[i]n the absence of more specific guidance, we look

first to the common law of torts ... with such modification or adaption as might be necessary to carry out the purpose and policy of the statute." The Court proceeded to review state standards for claims of punitive damages in tort cases in order to develop a federal standard for such damages. *See id.* at 48, 103 S.Ct. at 1639.

The *Smith* decision cannot be extended to this case for two reasons. First, section 1983, derived from the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1979), provides a federal means of redress when state officials have violated an individual's civil rights. That the Court established a federal standard for punitive damages under a statute designed to protect "federally guaranteed rights" does not support federalization of punitive damages under a statute that expressly incorporates state law. *Smith v. Wade,* 461 U.S. at 48, 103 S.Ct. at 1639. Second, punitive damages are fundamentally based in tort law, and section 1983 "was intended to create 'a species of tort liability' in favor of persons deprived of federally secured rights." *Id.* at 34, 103 S.Ct. at 1628 (quoting *Carey v. Piphus,* 435 U.S. 247, 253, 98 S.Ct. 1042, 1046, 55 L.Ed.2d 252 (1978)). By contrast, Magnuson-Moss is founded on contract law; punitive damages as a rule are not available in contract or warranty actions.

Moreover, since *Erie R. Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it has been well settled that "federal courts do not have the general law-making powers commonly exercised by state courts." *Jackson v. Johns-Manville Sales Corp.,* 750 F.2d 1314, 1323 (5th Cir. 1985). In *Jackson* the Court refused to create a federal common law governing punitive damages in asbestos litigation because there was no " 'uniquely federal interest' ... relat[ing] to an articulated congressional policy or directly implicat[ing] the authority and duties of the United States as sovereign." *Id.* at 1324–25.

## V. *Conclusion*

Ultimately, plaintiffs' argument is based upon a liberal reading of section 2310(d)(1) ("... may bring suit for damages and other legal and equitable relief...."). In

*Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974), the Supreme Court cautioned, "When 'interpreting a statute, the Court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute ... and the objects and policy of the law....'" (quoting *Brown v. Duchesne,* 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1857)). In light of the legislative history and remedial purpose of the Magnuson-Moss Warranty Act, the Court finds that certification of plaintiffs' punitive damages class would be inappropriate.